So, are we arguing just one of the cases, or are you a lawyer in both of the cases, or how is this working? I believe the way this is going to work, after the court granted the consolidation motion, is that I'm arguing on behalf of the government in both cases, and then counsel in the two cases are going to split their 20 minutes between them. Okay. Now, we understand that cert has been granted in the home, whatever case. Home concrete, yes. Home concrete, that entails both major legal issues in the case, as the cert's been granted, as I understand. Correct, yes. There are some factual questions, particularly in Reynolds' properties, perhaps, with regard to the tax court's determination that the issue was not properly raised in some fashion. We've decided to hear the argument because we don't know what's going to eventuate in the long run. So I think you should go on and argue the whole cases, but we do understand. I mean, the most likely result of all this is that we're going to hold it for the Supreme Court. But it still was a tough – we determined better for us to hear the argument. Certainly. We understand. And that is exactly where I was going to begin, and it sounds like you're fully up to speed on that, to just note that this is an issue that has deeply divided the six courts of appeals that have issued decisions since the regulations have come down. Additionally, there is another case that was argued in August in the Second Circuit called Wilmington Partners. The real party and interest in that is Bausch & Lomb, which is the amicus in this case. And so the Second Circuit has that under consideration and has not issued a decision. And they're, of course, aware that cert has been granted as well. So this makes, really, an eighth court in which the issue is in play in some fashion. Of those cases, the most recent, of course, is the D.C. Circuit opinion in Intermountain, which is a particularly long and thorough and scholarly opinion. The one that is perhaps the most on point procedurally with this case is actually the opinion of the Federal Circuit in Grapevine. And the reason I say that it may be the most procedurally on point is because the Federal Circuit was dealing with a situation similar to this court in that the Federal Circuit had on its books an earlier pre-regulation case, Salmon Ranch 1 from 2009. May I suggest, at least on my own behalf, not necessarily for my colleagues, that we know about all the cases from the other circuits, but what we need to decide is the case for ourselves. So telling us what the other circuits have decided, we know what the other circuits have decided. Let's argue the case. Okay. Certainly. All right. Perhaps I should begin, then, since it is fact-specific to this case, if you have no objections, with the point that is unique to Reynolds Properties, which is this issue of estoppel or judicial admissions. Essentially what happened here was Reynolds Properties filed its petition in tax court after Bakersfield, and it was pending when the tax court decided Bakersfield case. Are you the lawyer in the tax court? No. Tax court cases are handled by IRS attorneys. They're not handled by Department of Justice. Do you think if you were supervising that lawyer you would have thought that was an effective way to behave before the tax court? I'm sorry. I didn't hear that. Do you think if you were supervising that lawyer that you would have thought that that was an appropriate way to behave before the tax court? I think that his choice of words in some of those papers was not ideal. I.e., is there any chance he didn't know that this was a pending possibility of this regulation? Oh, I don't believe he knew that the regulation was going to come out. I don't think that that was done at the national office, and I don't think he as an attorney in the field knew about the regulation at all. And certainly the regulation, when he made the first of the representations that said issue here, the regulation was certainly far from coming out. The timeline, I believe, was in October of 08, he filed an opposition to a summary judgment that Reynolds Properties had filed. Reynolds Properties filed a very short motion for summary judgment in the tax court, saying essentially you've just decided, Bakersfield, we're the same facts as that case, you should give us judgment for the same reason. The government lawyer responded, it is true, Bakersfield is currently the law of the tax court, but it's on appeal to the Ninth Circuit. This case, Reynolds, is also appealable to the Ninth Circuit, and under the Golson rule the tax court follows the law of the circuit to which the case is going to be appealable, logically enough. So wouldn't it make sense for the tax court to just wait on the case? And I don't think the tax court actually entered a formal stay, but at least informally it didn't do anything with the case until this Court entered its decision in Bakersfield. And the attorney did use the phrase binding precedent. He said the Ninth Circuit's decision is going to be binding precedent here. But why do we have to get into fancy issues about estoppel or admission? And why couldn't the tax court judge simply or why didn't he essentially say, look, you've waived the issue. I'm not letting you go. In the end, I'm not letting you go further about this. Given the representations you made to me earlier, I'm not getting back to the merits of this issue in this case. Do we not have some obligation? Was that not within his discretion? Isn't that an appropriate way to run a courtroom? You can't sit here one day and give up an issue and then say, but I'm sorry, now I want it back?  Respectfully, Your Honor, we disagree with that. I don't think that the lawyer was giving up an issue. I think he was making a representation actually rather similar to what Reynolds itself said to this Court several weeks ago when they filed a motion to have this case taken off the argument calendar. They said in their motion papers that this case would be controlled by the Supreme Court's decision, and they thought it would be geared. A lot of us thought it was geared. That's perspective. I mean, that may be one thing, but this is retrospective. He had the case. He had the Bakersfield case. He had this. He knew, at least he knew that Bakersfield had said something about maybe the IRS could issue a reg. You're telling me that even though he was arguing a case directly on this, he had no way of knowing that a reg was in the works. Even assuming that, he certainly knew it was a possibility. Why couldn't the tax court say on simply, you know, that's it for this case? I mean, go argue some other case. His statement, his original statement was prospective. In other words, it was made in 08. I understand that. I'm not talking about that one. I'm talking about the one at the end. Yes. After the case had been decided, his statement to the Court then at that point was, I don't know whether the Court – I don't know whether this case is going to be appealed now. It's not yet final. I'm talking about at the very end. Okay. After the appeal. His last – his last statement, I believe, was when he said that the regulation had been issued. This was in October of 09. Wasn't there a statement between the time that the Ninth Circuit decided the case and when the regulation was issued? There were several. There was the statement to the effect that it was not clear yet whether there would be cert filed in Bakersfield or not. Then there was a statement subsequent to that. I don't have permission from my national office to concede this case away or to stipulate the case away. And then there was a statement at the end that a reg has been issued, but I have to check with the national office as to whether or not they will authorize me to withdraw the case or if that reg applies here. And then ultimately the Court issued an order to show cause and set this out as a sort of interrogatory. And the attorney then wrote a fairly lengthy brief answering a bunch of questions, including this one, and explaining that when he made these statements, they were true when made, but he certainly wasn't anticipating that a regulation would come down. And in any event, that's a change in law. It's not a factual. And that's really the difference between the judicial admission line of cases, as we indicated in our reply brief. Those deal with statements by attorneys of factual matters, like an admission that a tax return had been filed on a certain date or an admission that a letter made reference to a particular interest rate. Factual issues like that. This is a legal contention. I mean, it has a factual component, being that the cases are similar, but it's a representation about what the scope of future appellate decisions are going to be. Let me ask you a question. Why did the Commissioner concede assessment for the 2001 tax year? I'm sorry. I honestly don't know. I mean, it seems to me it's the same issue as here. I have to assume that there was a good reason to do that. I don't think they would have done that inadvertently. There was a little bit of a – and I apologize. In our brief, we made a mistake on page 49. We did not mean to drag that year back into it. What we said on the first page in the footnote was the correct statement. But I honestly don't know why. I guess that's why I bring this up. It seems to me the Commissioner conceded the very issue here, and I guess there's nothing in the record to say why conceded, so I thought maybe you'd know. I'm sorry. I don't. I did not look at that. Since it was off the table, that's not something that I looked at. It would have been easy to suggest that the disputes for 2002, 2004 being conceded by the taxpayers because the three-year statute would have applied. But as to the 2001, it seemed a little inconsistent with the position now taken by the Commissioner. And I have to assume that the Commissioner had a good reason for conceding 2001, which I just don't know the answer to. I'm sorry. Well, my worry is that when the Commissioner's status report conceded in September of 2009, September 16th, that Bakersfield is final and binding and requested additional time to obtain management approval of any concessions of this case based on the final resolution, it seemed to me at that point the poor tax court was in a – was being down – led down the road. I agree. I would not have stated this the way that that attorney for the IRS stated it. I felt it was misled. I mean, the tax court judge felt it was being misled. And ultimately, it was misled because presumably on September 16th, if he hadn't been told that Bakersfield was final and binding, he might have said, you know, I'm going to decide this right this minute. I'm going to tell you that it's final and binding right now. But he was being told that everybody agreed it was final and binding and they were just going to come up with some settlement, essentially. If we imagine hypothetically that the tax court judge had done just that and said, okay, I'm entering judgment right now, what would have happened is the government would have filed an appeal in Reynolds' property, which would have come to this court, and it would have been briefed in the ordinary course. And by the time either briefing was completed or it came up for argument, the regulation would have been issued by then and we'd be back in the same position. So, I mean, with all due respect to the tax court judge, I'm not sure that there's any real prejudice or harm, so to speak. The judge might feel a little misled by it, but I just mean as a practical matter, the case would have ended up here one way or the other. Or even early on, if the tax court had not stayed the case and said, no, forget it, I know it's at the Ninth Circuit, I'm going to enter judgment right now, we would have had to take an appeal and we'd probably be back in the same place without this issue. All right. Do you want to get to the merits of it? Okay. To proceed to the merits of the case. From my own hand, I wouldn't mind hearing about the timing issues, at least equally with the merits issues, i.e., how you managed to have this apply to a year as far back as it's applied to. Oh, yes, yes. The effective date provision, so to speak, of the thing. Well, we think that the D.C. Circuit and the Federal Circuit and the Tenth Circuit have really gotten it correct on that point in looking at the regulation, because the regulation says that it applies to cases that, to tax years that are open on September 24th, I think it is. It's perfectly obvious that in general, well, it's perfectly obvious. I gather there's a lot of debate about it. But the question about when tax regulations can be made retroactive or apply to earlier years substantively is one thing. But when you have a limitations period, which in this instance ran three years after or would have run under the Ninth Circuit's, under Colony and under the Ninth Circuit's Bakersfield decision years before, how is this still alive? Well, as the D.C. Circuit said, Colony was really not that clear. It was not at all clear at the time these tax years supposedly ran that that really was the law. So we have to buy into that. Suppose we didn't buy into that. Suppose we thought, as our Court said, and we have Bakersfield, which seems to say Colony was perfectly clear, and Colony does apply. That's not to say that the statute is perfectly clear, but as to whether Colony was perfectly clear, our Court said it was. So why isn't that binding on us? That there was nothing unclear about this at the time that the three years ran, nor was there anything unclear about this at the time the six years ran. The quick answer to that, and we pointed this out in our reply brief and at least in applied, is that Bakersfield from this Court came down after the three-year period ran here, well after the three-year period. All right. Well, suppose we're not bind by Bakersfield, and we look at Colony ourselves and we say it's perfectly clear, because that's what I would say. Then what? That there wasn't really anything unclear about this until – I mean, there may have been something unclear about the statute, but there was nothing unclear about the governing law at the time the three years ran. Well, several circuits have disagreed with that point, obviously, but we would say that the law was not settled at that point. For example, the old case of Finney, that's the Fifth Circuit case from the 68, I think, sometime. That case decided in favor of the government. We cited that a little bit in this Court. We have not cited it a great deal because in the Burks decision, the very recent decision of the Fifth Circuit, they said, no, no, no, Finney didn't really mean that, but we had counted Finney as a case on our side in this. Suppose we disagreed with that. Suppose we thought that the law – in other words, what I'm asking you, does your effective date position turn on the lack of clarity of the law at the time the three years ran in these cases? Yes. I think it turns on the fact that it wasn't clear that the statute ever closed, that the statute of limitations, the limitations period for making an assessment had actually closed at that three-year point, and the Commissioner had taken the position in other cases that the period was still open. So for that reason, the Commissioner is able to promulgate a regulation that has the effect of keeping that open. And as the Federal Circuit, and I think the D.C. Circuit pointed out, too, it was clear from the tenor of these regulations that the Commissioner intended them to apply to all these tax years. The wording might have been clearer if the Commissioner had said, if the tax period is still open as interpreted by these regulations, but however one does this, it ends up being slightly circular. I mean, the taxpayer's position is circular in the sense that they have to assume that the regulations don't apply, that the tax year closed because the regulations are not applicable. One way or the other, we have to look back to what the law was at that time. And I see I'm getting down to less than five minutes. I did want to reserve a bit of time for rebuttal. If you don't have more questions for me at this time. Well, I guess I wonder if you could talk about on the issue you're now speaking about the period was open based on when the FPAA was mailed. It seems to me that the period may have been open on the rentals tax return because the FPAA was mailed before the six-year statute of limitations ran. Yes. And that the three-year period then didn't apply when the FPAA was mailed and the case was still in litigation. Well, that's right. The mailing of the FPAA does toll or suspend the limitations period. So the question in these cases comes down to we use a shorthand, which is actually legally not quite accurate. We tend to say was the FPAA timely or not. Technically, there is no limitations period on when the IRS issues the FPAA. It's just that if they don't issue it within the open limitations period on assessment, it doesn't do much good because they wouldn't be able to assess. But once they do get it issued, that does toll all assessment periods until the whole litigation of that thing is over. And for, I think it's one year after, everything is wrapped up. But just to make sure I understand it, but if that FPAA or FPAA had been issued after the three-year point and we were to find that the three-year statute was clearly established, then the openness of it wouldn't matter. In other words, you have to have both, right? You need to have an open period. The litigation has to be open. And it has to be not clearly settled what the limitation period was in order for you to get where you want to get. Yes, I think that's correct. I think I'm understanding that right. The reason I wanted to talk about it, I think Judge Smith accurately represents, it seems to me that the FPAA in this case was not mailed during the three-year period, was it? Correct. It was not. It was not mailed during the six-year period. And that's really why we're here. If it were mailed during the three-year period, I don't think this would be an issue. So if we suggested it needed to be mailed during the three-year period, the government would lose. That's right. And that's really true of all of these cases. I mean, all of the six cases that are in the various courts of appeals, we are in litigation because the FPAA was not mailed during the three-year period. I think the thing that sort of mystifies me about this case on both hands, and we will give you some rebuttal time, so don't worry about it, is that on both sides there really aren't any reliance interests here in the sense that we're talking about a limitations period. We're not talking about the substance of it. Your opponents are not claiming that this was a legal way to report their taxes. They're just saying you can't come after them anymore. And you're not saying that you couldn't have found this within the three years. You just didn't. In other words, one thing that bothers me is that the government is acting as if there's some major imperative here, but I don't really understand why whatever you could have found out about these, what you regard as scams within the six-year period, you couldn't have found out within the three-year period. What I'm told by the IRS, and this is discussed to some extent in the Federal Circuit opinion in Salmon Ranch 1. There's a dissenting opinion of Judge Newman in that court who talks about this issue a bit. These were very difficult for the IRS to detect. We lay them out in these briefs. They sound now like it's relatively clear, but the Son of Boss shelter was very, very difficult for the IRS to figure out. It requires, it was well hidden. It requires putting together several different returns, typically filed by different entities, and the IRS had to get them all in front of them at one time. I went to a talk years ago by the IRS attorney who was the one who sort of the light bulb went off, and he discovered the first of these things. And it was very difficult. It seems obvious now, but it just was not easy. And it would appear that they were designed that way. If they had said, and I don't know if any of them did, in the return, we, and I don't understand this well enough perhaps to give the hypothetical correctly, but just as, insofar as I understand it. If, in addition to reporting the basis and the, their reported revenue, had also said, and by the way, we also, or some, our principals actually ended up buying the same property at some rate at a certain date, if they had said that much more. In other words, put in the additional fact. Would that have triggered the subsection 2 and we wouldn't be here? I mean, is that what they didn't say? They didn't report that transaction? I think that's correct, although that issue hasn't been decided yet in either of these cases. Because the tax court decided them on just the limitations period, it did not get to that second step of seeing whether the adequate disclosure provision or safe harbor has been triggered here. And as we noted in our briefs, I don't think these particular taxpayers dispute this. If the court does agree with us ultimately, either now or after the Supreme Court, there will be a remand necessary for the tax court to explore that issue about whether an adequate disclosure was made in some fashion. And on this topic. I mean, even literally speaking, in terms of this argument that an omission is an omission, is your – is one – is your – you don't exactly say this, but is that what was omitted, that piece of information? No. What was omitted was gross income. An amount was omitted from gross income. If – I mean, hypothetically, they sold something for $10 million. They claim a basis of $9 million. So they claim a gross income of $1 million in capital gain. The Commissioner says – But they put the right basis in and did the wrong calculation. I mean, if they had put in a basis that was proper, but then when they subtracted they made a mistake, that wouldn't be a problem, I presume, even if the gross income was actually wrong. I guess if that was on the return, if those numbers were on the return and the math error was evident, then yes, I think that would probably qualify as an adequate disclosure. Otherwise, like I said, we haven't gotten to that particular point here. But the problem was that doesn't appear anywhere on the face of the return. It simply shows this is our basis and you have to look at some other series of documents in order to figure out where they got that basis from. Or it may not be – it may not be reported anywhere. That's the basic problem. I would also point out that this whole statutory presumption is really what it is. This 25 percent substantial omission from gross income does not turn upon the facts of the individual case as to whether the six-year statute is triggered. It represents a sort of congressional presumption that when taxpayers omit that much money from gross income, it's probably going to generally be a problem for the IRS to detect. That's why we have this presumption. And we're not required to prove it case by case that, oh, yeah, this really was a hard one to detect.  All right. Thank you. Thank you very much for your argument. Sir. May it please the Court. I'm Steve Mather. I'm appearing for the taxpayer in the applied technologies case. And with me in the courtroom is Jill Currant, who is one of the ultimate taxpayers in that case. And co-counsel in the Reynolds property case is sitting at the table. We had originally planned that we would have a 15-minute division for me or allotment for me and five minutes for the Reynolds property counsel based on the questions to the government. Maybe we'll reallocate that differently. But in any event, I will start because the issue that I am addressing specifically, which is the principal issue in the applied technologies case, is the validity of the regulation. And I think it's appropriate to kind of segue from the government's presentation that this is not an issue that can be resolved in the vacuum, in the esoteric presumption of what the statute means. And what I'd like to do is I'd like to turn the Court in the excerpts in the applied technologies case to page 12. And this illustrates what this case is about. If you look on ER-12 in the applied technologies case, in about the middle of the page, there's a number that's $26,289,260. Now, the government has effectively stipulated that this is a number that appears on the face of the applied technologies return. It's one of the really big numbers. This was actually in a couple of different categories, but it has been stipulated that this is what was reported on the return. Now, the question that is presented is how, and this is the application of the statute, how is this $26 million number omitted from the return when it appears right on the face of the return? Now, I can't take credit for this question because this is the question that was posed by Judge Kleinfeld in the Bakersfield Energy Partner case. And I won that Bakersfield Energy Partners case because the government could not answer that question. And they still can't answer that question today. So they want to make this some kind of a theoretical presumption that doesn't have anything to do with the facts in the case. But the reality is, is that they're before Congress and the statute. But what we're really arguing about here is not whether it's omitted from the return, but whether it's omitted from gross income, aren't we? Whether you admit an amount of properly includable income from gross income. Well, the real issue is that we would contend, and we go back to the Bakersfield formula, if you will. I appreciate that. With the numerator and the denominator. With the numerator and the denominator, which was what the tax court found and what this court adopted, is that there must first be something omitted, something that is not there, something that is left out of the tax return. Well, I appreciate that that's what, if I even read that, I'll read very carefully about that. But if I read the regulation, I read the statute, I have a tough time saying that omission is the only thing we look at here in having a statutory interpretation of what I'm supposed to do. The case is very simple. The language is very simple. The omission from gross income, an amount properly includable therein. That's what I'm left to interpret. Right. And the government, and I guess I'm having a tough time where I say just because a number is on the return and it's not put in the gross income because they're trying to get less, that they have therefore been able to, if you will, avoid the pure language of the regulation. Well, the government's answer, let me move to that to illustrate why we think that the word omits is important. The government will have you believe that omits means understates. The entire position in the government's case, their regulation, their position in all of this litigation has been that omits means understates. And if the statute said, if you understate gross income by 25 percent, then you get a six-year statute, then we wouldn't be here because we would lose. But you did, I understand the government doesn't seem to be arguing it this way, but to me what you omitted was the information one needed to properly calculate the gross income, i.e., the transaction that meant that the basis was not what you said it was. There is something left out of there, right? You said basis was X. And by calculating, by using only, my understanding is the revenue from the sales, but not the cost of making, of getting to that revenue, right? In other words, your statement of the basis left something major out. Well, certainly there was, and we don't have this on the record of the case, but certainly there is not a detailed narrative explanation of how we determined the basis number that's on the return. But the tax return is essentially But more specifically, wasn't the basis one part of the transaction but not the other part of the transaction that led to, that brought the property into the partnership? That is, there was a reason that we claimed the basis that we did. I understand. And it had to do But you left something out, i.e., the other half of that transaction. Right. We claimed that one half of the transaction had a consequence for tax purpose and the other half of the transaction did not. That led to an erroneous gross income. That led to an erroneous statement of basis. Correct. And, therefore, an erroneous statement of gross income. So why isn't there something omitted from the gross income? Well, because the tax return is not a financial statement. It doesn't have 50 pages of footnotes explaining where your number comes from. The tax return is basically a form where you plug in numbers, and there's not really even intended to be lots of narrative schedules. If there had been, to go back to your point to the government, if there had been a further explanation, then maybe we would be under 2. But we haven't reached that point yet in this case. But that's not really what the tax return is there for. The tax return is there to report numbers. But in a sort of colloquial sense, you were hiding something. Not anything that would normally be included in a tax return. The purpose of the tax return is to report numbers. If the numbers are there, the IRS has three years to challenge the numbers. If the numbers are not there, they have six years. And that's really all that we're talking about here. Are we really talking about what omits really means? Yes. And didn't in Colony, which is the best place where you've got some, if you will, idea that what you're arguing is correct, didn't in Colony, right after they talked about what omits means, didn't they say, although we're inclined to think that the statute on its face lends itself more plausibly to the taxpayer's interpretation, it cannot be said that the language is unambiguous. So at that point, isn't it again a matter of statutory interpretation that really lends itself back to what the Supreme Court is going to do? Because they're going to tell us once and for all, we hope, what how we interpret this particular language. And since no court that I've read has really said this is clear and unambiguous, they've all said ambiguous. Aren't we in the same place? Even if we swallow your argument. No. The last point first. The Fourth Circuit in Home Concrete and the Fifth Circuit in Berks. And the Ninth Circuit in Bakersfield did say it was ambiguous. Yes. Yes. The Fourth and Fifth Circuits have both said that it's unambiguous. So you said there were no courts, and that's not. Okay. We're in the Ninth Circuit. For our purposes, it's ambiguous. When I say no courts, I don't look over to the Fourth and the Fifth to tell me if I've got a decision right on point. And Judge Smith may even want me to go out to the First. But I'll be fair. There's nobody I have to give deference to who's telling me that this is not ambiguous. The Bakersfield Court did not say that it was ambiguous. They said the only reference they have to ambiguous, and I went back and read it again to be sure, is they said in what I would characterize as a throwaway line at the end, which may have led the government to do what they did and brings us all back here again, that if the government thinks it's ambiguous, then they have a remedy of passing a regulation. I think you're misrepresenting what Bakersfield said. I think Bakersfield said clearly that it's ambiguous because the Supreme Court says it's ambiguous. Well, the Supreme Court didn't really. Certainly, the passage that Judge Smith wrote, read, is certainly true. And it's obviously quoted right from Bakersfield, but or from Colony. It's from Colony. Right, from Colony. Correct. But they also said our holding is consistent with the unambiguous language of the current statute. And so they made a specific reference that the current statute is unambiguous. I think you're over-reading that part of Bakersfield, it seems to me. No, no, but in Colony, they specifically say our holding today, well, I'm not quoting exactly, but our holding today is consistent with the unambiguous language of 6501, which was the statute that came into being three or four years after the dispute in Colony arose. So if you're making this argument about the sort of ultimate merits of whether the number was disclosed or not, and Judge Smith points out that it's gross income, not whether it's in the return. But why do we have to get to that? Isn't the real issue whether the regulations apply or don't apply? Because that tells us whether there's Chevron deference or not. And if there is, then regardless of the merits of what you may have to say about that, when we're in a Chevron deference situation, don't we have to defer to the IRS's position? Well, I think that that was the point that Judge Smith was getting to, is that if it's ambiguous, we get to Chevron. Our position is that it's not ambiguous and that, in fact, Colony essentially at the end of the day said it was unambiguous. The Ninth Circuit in Bakersfield did not say that it was ambiguous. And we believe that it is not ambiguous because we're talking about the plain meaning of one word, omits. Omits is not used very often in the Internal Revenue Code. It is used here because there's a specific purpose to that. Wouldn't you be requiring this panel to write an opinion that very ñ it would have to very carefully distinguish this situation from Bakersfield and from what the panel in Bakersfield said about what Colony said? I don't think that it's ñ I don't think it has to be carefully drafted at all. I think that the Ninth Circuit found that Colony was controlling. Certainly that is the holding of Bakersfield, is that Colony controls. Whether or not Colony says that it's ambiguous or unambiguous, it says both. So I don't believe it's that difficult a task to say, you know, we ruled, the Supreme Court ruled, the entire tax bar, everybody in the world for the last 50 years understood what omits means. And now the government has found it expedient to take a different tack. And so that makes it ambiguous. And that's really what we're talking about here because there were no challenges to this for 50 years after Colony was decided. There was no challenge when, in 1982, the IRS, in writing Section 6229, which is the exact same language that had already been interpreted by Colony to mean that omits means omits, that there was no ambiguity in this area for 50 years. The IRS has created it now because it's useful, because then it lets them ignore the Court and declare their own rule. But despite all that, your notion that there was some reliance interest here doesn't seem very strong, does it? Well, the point is that the statute of limitations are there for a reason. In 99 percent of the cases, it's a three-year statute. In our particular case, shortly after the petition in our case was filed, Versa Pandian, the principal taxpayer involved here, suffered a stroke. He is no longer able to testify. So the passage of time does not make the facts, the factual record in the case better. We've lost our key witness due to a stroke because it took the government such a long time to come after us. If they had done it within three years, this case would have been over long ago, long before we lost our key witness. But that's just an illustration of why it may not be a reliance issue, but it's still an important concept that, you know, statutes of limitations are there for a reason. And it's so the government can't take forever to come after you and then profit from the fact that you can't make your case as well anymore. Are you going to have your call now? Yes, I will. Thank you. Good morning. May it please the Court. My name is Anthony Didino. I'm counsel for Appellee George Reynolds. And I'd like to return to this issue of the effective date, because even if we assume that the regulations are valid, they do not apply by their very terms to the tax years at issue. Now, the regulation is clear. It states that it applies to tax years that are open on or after September 24, 2009. Now, in the Reynolds cases, we're dealing with tax year 2000. In applied technologies, tax year 2001. The only conceivable way that the statute of limitations was open in September 2009 for those tax years is if it was held open by the tax court litigation. This required the timely issuance of an F ball, which did not occur in these cases. The tax law ---- Simply because it was not issued within three years? That is correct, Your Honor. I mean, if it was issued within six years, then you're suggesting that's not enough. It's got to have been issued during the three years. Isn't that the basis of your argument? Essentially, and that's because the tax laws state that we determine timeliness on the mailing date. On the mailing date in these cases ---- I understand that, but that's really not going to answer our question. And that's ---- I mean, I looked at those issues pretty carefully as well. But if, in fact, one reads the statutes and one reads when an F ball has to come out, if, in fact, six years was the appropriate time period, you're really not arguing that an F ball didn't come out during that period. Well, this Court has already answered the question as whether the six-year statute applies or not. Again, we look at the crucial date, the mailing date of the F ball. There's no question that the three-year statute was closed on that date. It's not disputed. This Court has already held the factually analogous case of Bakersfield. Well, is this a interpretation argument or a constitutionally based underpinning that there would be a due process problem if we read it this way? In other words, what if the regulation had said flat out and more clear than it did, even if this ---- this applies to open litigation whether or not the three-year period ---- whether or not the F ball was issued within three years as long as it was issued within six years. I understand the government says it is saying. And, you know, and anywhere in the country, no matter what the law in that circuit was, if it were perfectly clear what it applied to, would there be a constitutional problem with that because you'd say, but it was clear under Colony and Bakersfield that it ran out in three years, or what? Well, this Court doesn't have to grapple with this issue because that would be a regulation that was retroactive, that the government was going to try to give a retroactive effect. They have been unequivocal in the preamble to the final regulations and in this litigation that these are not retroactive regulations. So the only issue before the Court is the government's argument that because the ---- there's not yet a final decision in these cases that the regulations can apply. But there's a disconnect there because a lack of a final decision doesn't answer the question posed by the regulations, which is, is the statute open on September 24, 2009? The assumption or the missing link there is that the litigation, the government is assuming that the litigation held open the statute. But aren't they reading the regulation in exactly the way that I described? Isn't that what they're saying the regulation means? I'm sorry? Aren't they saying that the regulation means exactly what my hypothetical suggested, i.e., this applies to any tax year in which litigation is now pending and the FPAW was issued within 6 years, even if at the time of the 3 years it ran, it hadn't been issued? I guess it's going to depend upon which interpretation this Court's going to give effect to, because the government on the one hand is arguing these are not retroactive regulations. But in reality, the only way ---- The preamble doesn't matter. Doesn't it ---- aren't they saying it means what I just said? And if so, if it does mean what I just said, then you're saying it doesn't mean what I just said, or are you saying that it would be unconstitutional or somehow invalid if it did? I think there's a consistency issue, which I wanted to point out, which is saying that they're not ---- the government is saying they're not retroactive, but then attempting to apply them retroactively. But if we were to assume that they apply retroactively, I think there are due process problems there. I think the Ninth Circuit's decision in Chennault is an example of why we can't retroactively apply a statute of limitations extension. Well, are you aware of any ---- I mean, what is really unusual, I think, about this case to me is the regulation statutory interface in the sense that it isn't that the statute changed, the statute didn't change. It's only the regulation that changed. And I guess if the statute had changed, if the regulation instead was a new statute which said with regard to limitations periods, it's now six years, not three years, and it's going to apply to any open case, would that be a constitutional problem? Well, I think we're ---- because we're in the Ninth Circuit here, I think we have a unique issue in that we do have a final decision of Bakersfield. So the law was clear. That's why I think it's an interesting interface. But that's why I'm trying to really pin down what your problem is. Suppose the law was ---- there was a clear statute, it wasn't a regulation. Would that be a problem, changing the statutory period in the same way that this thing purports to change it? Yes, I believe it would be, because, again, if we go back to the Ninth Circuit's decision in Chennault, really what's driving the Court's opinion there is that substantive rights change. On day one where there is a claim or defense to a claim, on day two there was no claim or vice versa, there was no defense. Here, you know, if we were to look narrowly at that period of time between September 15th when Bakersfield was final and the regulations took effect in September 2004, it's hard to dispute that where we had an affirmative defense where the government had no claim, all of a sudden as a result of the regulations, you know, our rights were changed and the government now had a springing claim essentially in an attempt to revive a statute that had been closed. So I think that there's significant issues with that. Okay. Your time is over. Thank you very much. Thank you both for your argument. We'll give you two minutes to rebuttal. Thank you very much. I appreciate it. I'll begin with the statute. Is your position that the regulation means what I just said it means?  Okay.  That's exactly right. And I think that's made clear by the preamble to the regulation as the D.C. Circuit says it intermountained an agency's interpretation of its own statutes or of its own regulations. So therefore, supposing we thought that there was no lack of clarity when the three years ran, and you keep arguing there was, suppose there wasn't, is that still your position and is there anything wrong with it? I don't think there's anything wrong with the reg. Even if there was no lack of clarity at the time that the three years ran? Correct. The position in the reg is that you have to remember in 6501, we're talking about the three-year period, the six-year period. There's a lot of other statutory periods out there and possible extensions. And really the gist of that preamble is if any of them are open, then this reg can apply. It could be, well, for example, there's a, it was at issue in some of the Supreme Court cases. There's a possible extension of the period in cases where people have not filed out. But there's an underlying assumption that you can't revive a dead case. Correct. For constitutional reasons, I assume. Correct. And we wouldn't try to revive Bakersfield, for example. That's clear that that's a dead case. But is this case alive only because the litigation is still ongoing or, I mean, what if we thought that the three-year limitation period applied at the three-year level and the case died? Then what? Would you say nonetheless it's okay for us now to say, well, actually, it's actually, we're still going to apply a six-year period to it? Yeah. I don't know what would have killed the case, so to speak, after three years. I guess if you're saying that the law was absolutely clear that it would have been. That's what I'm saying. Suppose we thought that. Then I guess you would have to say that the reg wouldn't reopen it. Okay. Because we do say it does not reopen closed tax years. And that's the context in which we say it's not retroactive. I mean, that's just kind of what we mean. So ultimately your whole position does depend on the lack of clarity of the law at the time of three years, right? Yes, I think so. Yeah. Is there anything that is going to be decided, you believe, by the Supreme Court in the, is it home concrete? Home concrete, yes. That will not answer the questions that are being posed to you today in this case? In other words, is there anything unique about what's in issue here that won't get clarified in those? The one thing that is not at issue in home concrete that is here is this very case-specific issue in Reynolds about judicial estoppel or judicial admissions. That's certainly not at issue in home concrete. Beyond that, if anything, home concrete is slightly broader than these cases because it's considering the Bakersfield issue as well. It's considering the plain meaning of the statute as well as the regulations. Or the Court might do what the Seventh Circuit does and stop at the plain meaning and say the regulations are not really needed. Okay. All right. Thank you very much. Thank all of you for a lot of help in a very interesting case, which we may not even decide. But the case of cases of Reynolds Property and Applied Technologies versus the Commissioner of Internal Revenue Service are submitted, and we are in recess. Thank you. Thank you.
judges: Smith, Berzon, Smith